**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** <u>NEW YORK</u>

-----------------------------------------------------------------x

CONFIDO ADVISORS, LLC, ETANO

Plaintiff/Petitioner,

- against -                              Index No. <u>651467/2017</u>

USAA REAL ESTATE COMPANY

Defendant/Respondent.

-----------------------------------------------------------------x

<b>NOTICE OF COMMENCEMENT OF ACTION<br>SUBJECT TO MANDATORY ELECTRONIC FILING</b>

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from e-filing. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in e-filing.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efile-unrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: _3-21-17_____

_____
Signature

VIVIAN R. DROHAN, LLP
_____
Name

DROHAN LEE LLP
_____
Firm Name

575 MADISON AVE.,
_____
Address

NEW YORK, NY 10022
_____

(212) 710-0004
_____
Phone

_____
E-Mail

To:   _____

_____

_____

9/3/15

FILED: NEW YORK COUNTY CLERK 03/21/2017 02:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 651467/2017
RECEIVED NYSCEF: 03/21/2017

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-------------------------------------------------------------------X

CONFIDO ADVISORS, LLC and
JOHN RODRIGUEZ,

                                    *Plaintiffs,*

        v.

USAA REAL ESTATE COMPANY,

                                    *Defendant.*

-------------------------------------------------------------------X

Index No.:
Plaintiff Designates
New York County
as the place of trial

The basis of venue is
Defendant's place of business

SUMMONS WITH NOTICE

TO THE ABOVE-NAMED DEFENDANTS: USAA REAL ESTATE COMPANY

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on the Plaintiff's Attorney(s) within 20 days after service of this summons exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer judgment will be taken against you by default for the relief demanded in the complaint.

    The nature of this action is for Breach of Contract, Misrepresentation and Tortious Interference with Prospective Advantage and Prospective Economic Relations; Misappropriation, Unjust Enrichment.

    Failure to appear will cause a judgment to be taken against you by default in excess of $3,000,000 Million plus interest from on or about March 21, 2017, with costs and disbursements of this action as well as attorney's fees.

Dated:  March 20, 2017
Defendants Addresses:


450 Park Avenue
New York, New York 10022

Drohan Lee LLP
*Counsel for Plaintiffs*
575 Madison Avenue
New York, New York 10022
(212) 710-0004
BY:

_____
VIVIAN R. DROHAN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------- X

CONFIDO ADVISORS, LLC and :
JOHN RODRIGUEZ, :
                              :    Index No. 651467/2017
              *Plaintiff,* :
                              :    **Verified Complaint**
   – against – :
                              :
USAA REAL ESTATE COMPANY :
                              :
                   *Defendant.* :
                              :

-------------------------------------------------------- X

Plaintiffs, Confido Advisors, LLC ("Confido"), by their attorneys, Drohan Lee LLP, as and for their complaint against Defendant, USAA Real Estate Company ("USAA"), allege as follows:

<b>JURISDICTION AND VENUE</b>

1.     This Court has jurisdiction under CPLR § 301 as Defendant is physically present in New York. Defendant does business in and/or maintains an office in New York. In addition, the agreement at issue between the parties.

2.     The Court has jurisdiction under CPLR § 302(a) as Defendants transact business in the state and/or committed a tortious act within the state or causing injury to persons or property within the state.

3.     Venue is proper in this Court pursuant to the CPLR as Defendants reside or otherwise maintains an office in New York County.

<b>THE PARTIES</b>

4.     Confido is a New Jersey limited liability company with a principal address of 100 Sandy

Point Drive, Brick, New Jersey 08723.

5.      Defendant USAA is a Delaware corporation with a principal address of 9830 Colonnade Blvd, Suite 60, San Antonio, Texas 78230-2239 and a regional office located at 450 Park Avenue, New York, New York 10022.

## SUMMARY OF THE ACTION

6.      Plaintiffs bring this action to recover compensation Plaintiff rightfully earned or should have earned and received, yet was denied due to Defendant's multiple breaches of contract, and to recover for reputational and professional injury resulting from Defendant's misconduct against Plaintiff and their clients.  Through several years as effectively exclusive agent in the real estate investment business for introducing investors to Defendant in South Korea, Confido, critically assisted Defendant USAA's efforts to attract Korean investors to investment funds which Defendant managed and investment management services, and brought Defendant USAA a substantial amount of business and investment contacts.  Towards the end of their contractual relationship, Defendant USAA acted to deprive Plaintiffs of referral fees from contacts Plaintiff had introduced to Defendants.  In addition, Defendants treatment of various individuals and institutions in the Korean investment community tarnished Confido's business reputation in such community and cost Confido actual business relationships and business opportunities.

## FACTUAL BACKGROUND

7.      Confido is a marketing and consulting firm and is in part engaged in the business of introducing potential investors to potential investment opportunities.  It is specifically focused on institutional investors based in the Republic of Korea (South Korea) for top-tier private equity funds, fund operators, and managers of alternative investments based in the United States.

8.      Rodriguez is the Chief Executive Officer of Confido.

2

9.     Both Confido and Rodriguez have accumulated a substantial amount of experience, reputational credibility and expertise, over fifteen years, in working with the South Korean institutional investment community and securing commitments of South Korean investors for investment in U.S. private equity funds, hedge funds and other U.S. investment vehicles.

10.    Over the years Confido and Rodriguez have built a network of over two thousand contacts in South Korea, investing a substantial amount of time and resources.

11.    As a part of his ongoing business working as a bridge between the South Korean investment community and investment funds and related operations in the U.S., Rodriguez divides his time between the U.S. and South Korea.  On average, he spends about ten days out of every month in South Korea traveling throughout the country.  When he is not in South Korea, he resides principally in New Jersey.

12.    Defendant USAA in a Delaware corporation.  While it is headquartered in San Antonio, Texas, it maintains a regional office in New York.

13.    Plaintiffs interacted with both the Texas and New York offices of Defendant USAA in the conduct of its business.

14.    According to its site, Defendant USAA presently manages approximately $17 billion in real estate assets across a broad spectrum of investment strategies and through several different investment vehicles.  It is part of a diversified financial services group of companies that provides banking, investment, and insurance services to individuals presently serving or who have previously served in the U.S. military and to the family members thereof.

15.    For years Confido has maintained an ongoing business relationship with Square Mile Capital Management LLC, a Delaware limited liability company with offices at 350 Park Avenue, 15th Floor, New York 10022 and certain affiliates thereof (collectively, "Square Mile").

This relationship was initially formalized through a written Consulting Agreement dated as of November 1, 2010 and extended in 2012 and 2013.  Confido served in substantially the same capacity for Square Mile as it later did for USAA, providing marketing services on behalf of investment funds they manage and introducing potential institutional investors that are located in South Korea.

16.     After Defendant USAA acquired an interest in Square Mile in or about 2012, Square Mile introduced Confido to Defendant USAA, for purposes of Confido providing marketing and capital raising services to USAA.  Square Mile provided a strong business reference for Confido which led to negotiations with USAA and Square Mile regarding the services to be provided and the compensation payable to Confido.

17.     These negotiations culminated in Confido and Defendant USAA entering into a formal agreement in October 2012, that certain Consulting Agreement by Confido and USAA dated as of October 1, 2012, annexed hereto as Exhibit A (the "Original Agreement").

18.     The Original Agreement was amended three times to extend the term of the agreement and to provide for certain revised terms—by (i) the First Amendment to Consulting Agreement dated March 1, 2013, annexed hereto Exhibit B (the "1st Amendment"), (ii) the Second Amendment to Consulting Agreement dated September 30, 2013, annexed hereto as Exhibit C (the "2nd Amendment"), and (iii) the Third Amendment to Consulting Agreement, annexed hereto as Exhibit D (the "3rd Amendment," and together with the Original Agreement, the 1st Amendment and the 2nd Amendment, the "Consulting Agreement").

19.     The Consulting Agreement, specifically the 3rd Amendment, was drafted by USAA.

20.     The Original Agreement provided in Article IV that Confido would be compensated for its services for Defendant USAA by a combination of a retainer fee (the "Retainer") and an

incentive-based "success" fee (the "Success Fee").   The Retainer consisted of a set non-refundable amount payable for the term of service.   Section 4.03 defined the Success Fee as follows:

> With respect to each investment made by a Qualifying Investor included on the Approved Prospects List, Manager shall pay Confido a Success Fee equal to One Hundred (100) basis points (1.00%) of the total capital commitment made by the Qualifying Investor to Manger (or one or more of its affiliates) in connection with (i) the initial commitment made by the Qualifying Investor, and (ii) any additional commitments made by that Qualifying Investor during the investment period (as it may be extended) of the USAA Investment Vehicle.

21.   'Manager' refers to USAA.  'Qualifying Investor' is defined in Section 1.01(kk) as "any Person (A) on the Approved Prospects List, (B) Introduced by Confido to the Manager during the Term, or (C) that otherwise qualifies under Section 2.02(b)" and is limited to "Persons that are" either (i) "residents and/or domiciled in Korea" or (ii) "residents of China or Japan" that "have been expressly approved by Manager."   As a defined term for purposes of the agreement, 'Introduced' is defined in Section 1.01(x) as "a specific introduction of a Prospect to Manager or its Affiliate (through any one or more of its principals or investment professionals), which may include face-to-face or telephonic introductions or through organized or hosted conferences or seminars, which introduction results in a request by such Prospect for written marketing materials with Respect to the Manager or an USAA Investment Vehicle."   Under Section 2.02(a), 'Prospect' refers to "any potential investor for a USAA Investment Vehicle" and the 'Approved Prospects List' means a list of Prospects approved by Manager, which Prospects must have been located in South Korea and first been included in a notice by Confido to Manager prior to "making any marketing or solicitation efforts thereto" and may be added to the list by implied consent if Manager fails to send a timely notice denying the inclusion of the Prospect on the list to Confido. Section 1.01(xx) defines 'USAA Investment Vehicle' as *"any closed-end fund,*

*open-end fund, separate account, or other direct investment vehicle for which the Manager or an Affiliate serves as investment manager, investment advisor or provides any such similar investment management or investment advisory services."* (emphasis added).

22.     Section 2.02(b) further provides that "[n]otwithstanding Section 2.02(a) . . . , if the Manager or any of its Affiliate is Introduced to a Confido Notice Prospect"—a Prospect included in a notice by Confido to Manager—"or a representative of a Confido Notice Prospect during the Confido Notice Prospect Period, and such Confido Notice Prospect subsequently issues a Commitment for a or invests in *any* USAA Investment Vehicles, such Confido Notice Prospect shall be deemed a Qualifying Investor." (emphasis added).

23.     Section 1.01(g) of the Original Agreement defines 'Commitment' as "a binding written subscription for interests in any USAA Investment Vehicle, made by a Qualifying Investor on the Approved Prospects List during (i) the Term" of the agreement or "(ii) prior to any Tail Expiration Date or during the Tail Extension Period, as applicable."

24.     The 2nd Amendment extended the term of the agreement, originally set to terminate as of December 31, 2013, by an additional year.   It provided for an additional Retainer for the extension period.   The 2nd Amendment coincided with a similar amendment to Confido's agreement with Square Mile, which had become affiliated with USAA, following negotiations with both in which Confido agreed to accept substantially reduced retainer fees in the aggregate from Square Mile and USAA, with USAA obligated to pay the majority of the combined retainer fee. Since USAA contracted with Confido, Square Mile and USAA had entered into a de facto fee-sharing arrangement with Confido with respect to retainer fees otherwise separately payable by each as a distinct client of Confido.   Confido agreed to lower upfront fees in consideration of building a closer, ongoing business relationship with USAA and with the expectation of earning

substantial Success Fees in leveraging its professional network and contacts in South Korea to bring business to USAA and its investment activities.

25.     The 3rd Amendment provided for an additional extension of the term of the agreement, through December 31, 2015.  It also clarified compensation payable to Confido in the event certain Prospects approved by USAA made capital commitments to USAA following the end of the Consulting Agreement's term (i.e., after December 31, 2015).

26.     The 3rd Amendment revised the definition of 'Commitment' to include either "(i) a binding written subscription for interests in *any* USAA Investment Vehicle, made by a Qualifying Investor on the Approved Prospects List during the Term" or "(ii) a binding written subscription for interests in *any* USAA Investment Vehicles, made by a Qualifying Investor on the Tail Period Prospects Lists after the Term but before the Tail Expiration Date," that is, a date one year following the end of the term of the agreement, in accordance with Section 1.01(u). (emphasis added)

27.     Under the revised Section 4.03 set forth in the 3rd Amendment, Confido would earn a partially reduced Success Fee—75 basis points instead of 100—for any Qualifying Investor on either the Approved Prospects List or Tail Period Prospects List (an "Approved Investor") that made a Commitment "to Manager or one or more of its affiliates."

28.     The Tail Period Prospects List was defined in Section 9.07 of the Consulting Agreement, which was added by the 3rd Amendment:

> Not less than 20 days before the expiration of the Term . . . , Confido shall give written notice to the Manager of the identity of Approved Prospects on the Approved Prospects List that have evidenced an actual and bona fide interest in investing in a USAA Investment Vehicle prior to the Tail Expiration Date, which interest shall be evidenced by each such Approved Prospect having made statement of interest to invest, being actively engaged in due diligence and/or having submitted, or being in the process of submitting, an investment request to its real estate investment committees for approval.

29.     During the term of the Consulting Agreement, Confido kept USAA updated and informed on the investment market in South Korea and development prospects and, in conformance with the agreement terms, arranged numerous trips to South Korea where USAA representatives would be introduced to representatives of various Korean institutional investors, including governmental institutions interested in investment opportunities outside of South Korea. Rodriguez, on behalf of Confido, primarily interacted with Susan Wallace ("Wallace"), Executive Managing Director, Global Investors Group of USAA. Communications regarding the Consulting Agreement and drafting of the amendments generally included Steve Waters ("Waters"), General Counsel for USAA.

30.     During the term of the Consulting Agreement (as extended through December 31, 2015), Confido introduced to Defendant USAA (or its affiliates) approximately One Hundred [100] Prospects, of which about Fifteen have since made a capital commitment to a USAA Investment Vehicle. In total, capital commitments made by Prospects that Confido introduced to USAA or its funds amounted to approximately six hundred million dollars [$600,000,000.00].

31.     The Consulting Agreement also substantially restricted the extent to which Confido or Rodriguez could offer their marketing and capital raising to alternative clients during the entire (extended) term of the agreement—particularly with respect to the sort of investment activities in which USAA engaged—thus Confido was especially dependent on USAA as a source of revenue for its business activities. Section 2.04 of the Consulting Agreement provided that "[d]uring the Term, Confido shall not serve as placement agent in any private placement with respect to any fund, structured product, managed account, or other investment vehicle or investment product with the primary investment objective of investing in U.S. real estate or real estate related

investments" with the exception of certain ongoing activities for Square Mile and Bedrock Capital.

32.     After deciding not to extend the Agreement beyond 2015, Confido and USAA negotiated through December 2015 the introduced investors to be included on the Tail Period Prospects List.

33.     Rodriguez requested through email communications with Wallace that several institutions should be included on the Tail Period Prospects List.

34.     In response, Wallace rejected certain institutions, such institutions had expressed an interest in investing with USAA or its affiliates or as otherwise qualified to be placed on the list. In at least two occasions, these refusals by Wallace were entirely false or substantially misleading.  Two of the institutional investors that Confido specifically asked to be included and which Wallace denied to include—Suhyup (Korean Fisheries Pension Fund) and Seoul National University ("SNU")—later made significant Commitments to USAA funds before the Tail Expiration Date, and had they been placed on this list would have entitled Confido to significant Success Fees.  Suhyup committed $30 million to a USAA fund, which would have resulted in a $225,000 Success Fee.  SNU committed $10 million to a USAA fund, which would have resulted in a $75,000 Success Fee.  USAA continued to communicate with these potential investors despite excluding them from the Tail Period Letter, eventually culminating in their decisions to invest capital with USAA.  USAA never informed Confido or Rodriguez of these continued communications.

35.     In addition, Korea Post Office ("Korea Post") had expressed an interest in investing in USAA, and USAA had ongoing communications with Korea Post concerning possible investment with USAA.

36.     USAA failed to disclose any of these communications or Commitments to Confido or Rodriguez, in contravention of its obligations under the Consulting Agreement, including actual and implied covenants of good faith.  For example, Section 4.04 provided that "Manager shall send Confido a statement within ten (10) days after the end of the quarter showing the total capital commitment for each Qualifying Investor, together with the amount of capital drawn down during the immediately preceding quarter."

37.     Section 11.02 of the Consulting Agreement provides, *inter alia*, that during the term of the agreement and for two years following termination (i) neither party may disclose Confidential Information of the other "to any person outside the scope of [the agreement] except with prior written consent of the other [p]arty," and (ii) neither party may use Confidential Information "for its own account outside the scope of [the agreement] or for the benefit of any third party . . . without the prior written consent of the other [p]arty."   Section 11.01 defines Confidential Information to include "with respect to Confido, all information, whether oral or written, concerning or relating to the names, addresses, contact information, and other investment-related strategies or information concerning any Introduced Contacts or any Prospects identified on Confido Notices or Approved Prospects Lists, or concerning Qualifying Investors, or with respect to Confido's relationships and methods and/or strategies with respect to marketing investment products to or raising capital from such parties."

38.     Section 4.04 also provided that while the Success Fee was earned under Article IV of the Consulting Agreement when a Qualifying Investor on an appropriate list made a Commitment— committing but not necessarily contributing capital to a USAA Investment Vehicle—the fee would not be paid to Confido until capital was drawn down by the applicable fund.

39.     Relying on Section 4.04, USAA has withheld payments of Success Fees to Confido from certain Approved Investors that made a Commitment to a USAA fund, including Military Mutual Aid, a Korean pension fund ("MMA"), on the basis of a failure to call capital despite the commitment of capital.  USAA did so in part in apparent retaliation for MMA's attempts to make a direct investment in real estate investment opportunities outside of USAA, despite having already made capital commitments to USAA, not on the basis of any legitimate commercial reason.

40.     The final Tail Period Prospects List was memorialized on December 14, 2015, annexed hereto as Exhibit E (the "Tail Period Letter").

41.     Certain Approved Investors listed in the Tail Period Letter including Korea Post Office ultimately made Commitments to a USAA fund.  Despite this, USAA has wrongfully denied that Confido earned any Success Fee from these Commitments because the Commitment was made to a fund other than one listed parenthetically in the Tail Period Letter.  For example, Korea Post Office was listed in the Tail Period Letter with the parenthetical reference "(for GB Fund)," referring to USAA's Government Buildings Fund ("GB Fund").  Korea Post Office made a Commitment prior to the Tail Expiration Date in USAA's Eagle Fund ("Eagle Fund") in the amount of seventy million dollars [$70,000,000.00].  Under the terms of the 3rd Amendment and the Consulting Agreement generally, Confido rightfully earned a Success Fee of $525,000 (based on 75 basis points for an investor listed on the Tail Period Prospect List), which USAA has wrongfully and unjustifiably refused to recognize or honor in any way.

42.     The parenthetical reference to a particular fund in the Tail Period Letter was included generally to satisfy the Consulting Agreement's requirements for including a potential investor on the Tail Period Prospects List, namely that said potential investor has "evidenced an actual

11

and bona fide interest in investing in a USAA Investment Vehicle prior to the Tail Expiration Date, which interest shall be evidenced," *inter alia*, "by each such Approved Prospect having made statement of interest to invest." Consulting Agreement § 9.07.   In no place does Section 9.07 of the Agreement preclude Confido from earning Success Fees from potential investors on the Tail Period Prospects List as Korea Post Office that invest in funds other than those specified on the Tail Period Letter.  Success Fees are earned based off Commitments made by Approved Investors—which includes those listed on the Tail Period Letter.  A Commitment, as such definition was revised by the 3rd Amendment drafted by USAA, includes any capital commitment made by an Approved Investor to *any* USAA Investment Vehicle, including the GB Fund, Eagle Fund, and other USAA funds. (emphasis added)

43.   In fact, Rodriguez had initially introduced Korea Post to USAA for a possible investment in the Eagle Fund—not the GB Fund—including during initial meetings in Seoul that Rodriguez had arranged with Jurng Chiljoon, Chief Information Office of Korea Post Office, Wallace and Len O'Donnell ("O'Donnell"), President and Chief Executive Officer of USAA, present. Despite USAA's focus on the GB Fund in certain earlier correspondence regarding building in its investor base in South Korea, the parties had long advocated and operated on the basis that multiple USAA fund opportunities, not just the GB Fund, should be marketed to potential investors in South Korea.  Rodriguez consulted with Wallace on this and others at USAA as early as 2013.   At or near this time Wallace shared with Rodriguez graphical representations of USAA's various product lines and funds, which included USAA Insurance Company Lending Program, the GB Fund, the Eagle Fund, Cobalt Industrial Fund/separate accounts, and USAA Office Development Fund, alongside various Square Mile funds.

44.     Korea Post considered an investment in both the Eagle Fund and GB Fund since Confido had introduced it to USAA.  As noted above, it ultimately settled on the Eagle Fund.  It so happened that Korea Post's focus had shifted in the direction of the GB Fund at the time the Tail Period Letter was concluded, and thus this interest in this USAA fund was how it met the qualifying criteria for inclusion on the Tail Period Prospects List.  Nevertheless, it was a Qualifying Investor on said list that made a Commitment—a substantial commitment—during 2016, before the Tail Expiration Date.  By denying that Confido earned fees on this Commitment, USAA has blatantly violated the Consulting Agreement and wrongfully deprived Confido of significant compensation to which it is fully entitled.

45.     When Rodriguez objected to the failure to consider this Commitment as one entitling Confido to Success Fees, Wallace cited to the added Section 9.07 said that since the qualifying language was specific to a certain investment—in this case the GB Fund—Korean Post's investment in the Eagle Fund could not be considered for addition to the list, thus depriving Confido of any Success Fees from this investment.  This is in direct contravention of the Consulting Agreement.  Section 4.03 clearly provides that Confido earns a Success Fee if a Qualifying Investor on the Tail Period Prospects List—which includes Korea Post—makes a Commitment to USAA or *any* of its affiliates.  A Commitment means a capital commitment to any USAA Investment Vehicle, including either the GB Fund or the Eagle Fund. (emphasis added)

46.     USAA's actions went further.  Confido introduced to USAA a key client and contact in South Korea— Pension Office Benefit Association ["POBA"]—for possible investment in USAA funds.

47.     As part of the arrangement, USAA promised to host, at USAA's expense, POBA representatives and employees in Texas to learn more about the real estate and real-estate related investment market in the U.S., to arrange meetings with USAA representatives, as well as other opportunities on or about June 2014.   At the last minute USAA made an unspecified and unsubstantiated determination that such an event would present possible securities law violations and abruptly canceled the entire event.

48.     As a result of the canceled Texas event, POBA, who were previously considering investing more funds through Confido, have since refused to work with Confido or Rodriguez any further despite a longstanding professional relationship.   In addition, this incident severely tarnished Confido's reputation, and Rodriguez's personal and professional reputation, in South Korea.   This is particularly damaging to Confido since nearly all of Confido's and Rodriguez's business and professional activities are focused almost exclusively on South Korea.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**

49.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

50.     Defendant breached the Consulting Agreement by failing to pay Success Fees and recognize Success Fees as properly earned on Korea Post Office, an Approved Investor duly listed on the Tail Period Prospects List—in this case, the Tail Period Letter.

51.     Defendant breached the Consulting Agreement and their obligations under the covenant of good faith and fair dealing in failing to include validly introduced potential investors, including Suhyup and SNU, on the Tail Period Prospects List, given that USAA continued to communicate with such investors and such investors eventually made significant Commitments prior to the Tail Expiration Date—the period in which Confido would have earned Success Fees.

52.     Defendants used confidential and proprietary information of Confido for their own purposes, outside the scope of the Consulting Agreement, without permission from or consultation with Confido, and without proper compensation to Confido, in breach of their confidentiality obligations under Article XI of the Consulting Agreement.

53.     Defendants failed to draw capital from certain investors for improper reasons, thus depriving Confido of duly earned Success Fees by avoiding the conditions to payment of such earned fees.

54.     The actions of the Defendants are extreme and outrageous, and have been undertaken maliciously, deliberately and with willful intent to cause harm to Plaintiffs and Plaintiffs are, therefore, also entitled to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Misrepresentation)

55.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

56.     Representatives of Defendant including Wallace knowingly misrepresented that certain potential investors introduced by Confido and Rodriguez to USAA were not interested or had not expressed any interest in investing in USAA, and/or failed to disclose ongoing communications between USAA and such investors.

57.     Defendant induced Confido to rely on such statements by failing to insist that these potential investors be included on the Tail Period Prospects List.

58.     Therefore, Defendant improperly avoided payment of Success Fees to Confido for these prospective investors once they did in fact invest in USAA during the period in which Confido would be entitled to fees—namely, prior the Tail Expiration Date.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Tortious Interference with Prospective Advantage and
### Prospective Economic Relations)

59.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     As set forth above, Defendant benefitted from the substantial number of introductions made by Rodriguez and Confido to Defendant, leading to substantial investments by institutional investors based in South Korea.

61.     These introductions came from contacts within a comprehensive network built by Rodriguez and Confido over the years in the Korean investment community as a result of considerable time and resources.

62.     Defendant's misconduct, including with POBA and other investors that were left off the Tail Period Prospects List, precluded Confido from having a continuing relationships with these institutions.

63.      But for the Defendant's actions, these institutions would have maintained or entered into future business relationship with Rodriguez and Confido.

64.     Defendant's interference with Rodriguez's and Confido's goodwill with current and prospective clients and investment contacts is and was intentional, malicious and without justification, and diminishes Plaintiffs' reasonable expectations of economic advantage and contractual and/or business relationships.   With respect to POBA, Defendant fraudulently induced POBA to consider investing in its funds through the promise of hosting them in Texas, when they ultimately decided not to do so.  Defendant also committed misrepresentation with respect to Suhyup and SNU, fraudulently inducing Rodriguez and Confido to fail to insist on including them in the Tail Period Letter by misrepresenting their interest in USAA.

65.     Defendant's interference is for Defendant's own purposes and with the intent to harm Plaintiffs.

66.     As a direct and proximate result of the deliberate and willful interference by the Defendants Plaintiffs have been substantially damaged and are entitled to a judgment in an amount to be determined at trial, together with interest and attorneys' fees.

67.     The action of the Defendants were and are extreme and outrageous, and have been undertaken deliberately, and with willful intent to cause harm to Plaintiffs and Plaintiffs are, therefore, entitled to punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Misappropriation)

68.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     Article XI of the Consulting Agreement clearly includes Confido's contacts with potential investors in South Korea and investment-related strategic information with respect to such investors within the scope of Confidential Information.  Defendant was barred from using this information for its own purposes outside of the Agreement without the express written consent of Confido.

70.     Without receiving Confido's consent whether written or oral, and without even consulting with or informing Confido, Defendant used Confidential Information and otherwise directly contacted certain potential investors that Confido had introduced and continued to communicate with them despite indicating to Confido the lack of interest of such investors in Defendant's funds.

71.     Certain investors with which Defendant privately communicated eventually invested in Defendant's funds, and Defendants never compensated Confido for such investments.

72.     As a direct and proximate result of defendant's actions, Plaintiffs have been damaged and are entitled to a judgment in an amount to be determined at trial, together with interest and attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants)

73.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     As a result of the Defendant's aforementioned unlawful actions, Defendants have been and will continue to be unjustly enriched at Plaintiffs' expense.

75.     As a direct and proximate result of the actions of the Defendants with respect to use of Plaintiffs' confidential and proprietary information, Plaintiffs have been and will continue to be irreparably damaged and are entitled to a judgment in an amount to be determined at trial, together with interest and attorneys' fees.

76.     The actions of the Defendants are extreme and outrageous, and have been undertaken maliciously, deliberately and with willful intent to cause harm to Plaintiffs and Plaintiffs are, therefore, also entitled to punitive damages.

77.     As a direct and proximate result of the conduct of the Defendants, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of significant student relationships, loss of goodwill, damaged business reputation, lost corporate opportunities and lost profits.

78.     Plaintiffs have no adequate remedy at law. The injury to Plaintiffs is immediate and irreparable.

79.     Equity favors issuing the injunction to prevent Defendant's continued use of stolen and/or diverted materials.

80.     Based on the foregoing, Plaintiffs are entitled to a temporary restraining order and preliminary and permanent injunction enjoining and restraining the Defendants from using and/or disclosing Plaintiffs' confidential information for their own purposes outside of the Agreement.


**WHEREFORE,** Plaintiffs respectfully demand judgment as follows:

   (i)     awarding damages in an amount to be determined at trial, but no less than three

           million dollars [$3,000,000];

   (ii)    awarding punitive damages in an amount to be determined at trial; and

   (iii)   granting such other and further relief as this Court deems just and proper.


Dated: New York, New York
       June 19, 2017


                              Respectfully Submitted,
                              DROHAN LEE LLP
                              *Counsel for Plaintiffs*


                              Vivian R. Drohan
                              Terence Schroeder
                              575 Madison Avenue
                              New York, NY 10022
                              (212) 710-0004
                              (212) 710-0013

## VERIFICATION

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

John Rodriguez, affirms as follows:

I am the Chief Executive Officer of Confido Advisors, LLC in this action.

That the foregoing Verified Complaint is true to my knowledge, except as to those matters therein stated to be alleged upon information and belief and that as to those matters he believes it to be true.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: New York, New York
       6/19/17, 2017

_____
John Rodriguez

Sworn to me this 19 day
of  June , 2017

_____

**Vivian Rivera Drohan**
Notary Public, State of New York
No. 24-4977380
Qualified in Columbia County
Comm. Expires ___4/20/19___