**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X

CONFIDO ADVISORS, LLC and JOHN : 
RODRIGUEZ, :
               Plaintiffs, :
                     :
   -against- :
                     :
USAA REAL ESTATE COMPANY, :
                     :
              Defendant. :
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/6/2018

No. 17 Civ. 5632 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS CONFIDO ADVISORS, LLC and JOHN RODRIGUEZ:
    Vivian Drohan, Esq.
    Terence Michael Schroeder, Esq.
    DROHAN & LEE LLP

FOR DEFENDANT USAA REAL ESTATE COMPANY:
    Johnathan D. Pressment, Esq.
    William Feldman, Esq.
    HAYES AND BOONE LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Defendant USAA Real Estate Company ("USAA") to dismiss Plaintiffs Confido Advisors, LLC and John Rodriguez's (together, "Plaintiffs") complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, USAA's motion is granted in part and denied in part.

## I.  Background

    Unless otherwise noted, the following facts are drawn from the complaint and are assumed to be true for the purposes of this motion.  Plaintiff Confido Advisors, LLC ("Confido") is a

1

marketing and consulting firm focused on institutional investors based in the Republic of Korea ("South Korea") for top-tier private equity funds, fund operators, and managers of alternative investments based in the United States. (Compl. ¶ 7.) Plaintiff John Rodriguez ("Rodriguez") is the Chief Executive Officer ("CEO") of Confido. (Id. ¶ 8.) USAA is a Delaware corporation and part of a diversified financial services group of companies that provides banking, investment, and insurance services to individuals presently serving, or who have previously served, in the U.S. military and to the family members thereof. (Id. ¶¶ 12, 14.)

For years, Confido has maintained an ongoing business relationship with Square Mile Capital Management LLC. (Id. ¶ 15.) Confido served in substantially the same capacity for Square Mile as it later did for USAA, providing marketing services on behalf of investment funds they manage and introducing potential institutional investors that are located in South Korea. (Id.)

After USAA acquired an interest in Square Mile in 2012, Square Mile introduced USAA to Confido, for the purposes of providing marketing and capital raising services to USAA. (Id. ¶ 16.) Negotiations between Confido and USAA culminated in a formal agreement between the parties dated October 1, 2012 (the "Consulting Agreement") which provided for an initial 14-month

2

term scheduled to expire on December 31, 2013. (Id. ¶¶ 17, 24.)
The Consulting Agreement was amended three times to extend the
term of the agreement and provide for certain revised terms:  on
(1) March 1, 2013 (the "First Amendment"), (2) September 30,
2013 (the "Second Amendment"), and (3) December 31, 2014 (the
"Third Amendment"). (Id. ¶ 18.)  In the original version of the
Consulting Agreement, Article IV provided that Confido would be
compensated for services provided to USAA by a combination of a
non-refundable $300,000 retainer fee (the "Retainer") and an
incentive-based "success" fee (the "Success Fee"). (Id. ¶ 20;
Pressment Decl. Ex. B § 4.01, ECF No. 17 at 25 (filed Oct. 27,
2017) [hereinafter Consult. Agr.].)  Section 4.03 of the
Consulting Agreement defines Success Fee as follows:

> With respect to each investment made by a
> Qualifying Investor included on the Approved
> Prospects List, [USAA] shall pay Confido a
> Success Fee equal to One Hundred (100) basis
> points (1.00%) of the total capital commitment
> made by the Qualifying Investor to [USAA] (or
> one or more of its affiliates) in connection
> with (i) the initial commitment made by the
> Qualifying Investor, and (ii) any additional
> commitments made by that Qualifying Investor
> during the investment period (as it may be
> extended) of the USAA Investment Vehicle.

(Compl. ¶ 20; Consult. Agr. § 4.03.)  "Qualifying Investor" is
defined as "any Person (A) on the Approved Prospects List, (B)
Introduced by Confido to [USAA] during the Term, or (C) that
otherwise qualifies under Section 2.02(b)" and is limited to

"Persons that are" either (i) "residents of [] and/or domiciled in Korea" or (ii) "residents of China or Japan" that "have been expressly approved by [USAA]." (Compl. ¶ 21; Consult. Agr. § 1.01(kk).) Section 2.02(b) of the Consulting Agreement further provides that "if [USAA] or any of its Affiliates is Introduced to a Confido Notice Prospect"—a Prospect included in a notice by Confido to USAA—"or a representative of a Confido Notice Prospect during the Confido Notice Prospect Period, and such Confido Notice Prospect subsequently issues a Commitment for or invests in any USAA Investment Vehicle, such Confido Notice Prospect shall be deemed a Qualifying Investor." (Compl. ¶ 22; Consult. Agr. § 2.02(b).) "Commitment" is defined as "a binding written subscription for interests in any USAA Investment Vehicle, made by a Qualifying Investor on the Approved Prospects List during (i) the Term" of the agreement or "(ii) prior to any Tail Expiration Date or during the Tail Extension Period, as applicable." (Compl. ¶ 23; Consult. Agr. § 1.01(g).)

The Third Amendment provided for an additional extension of the term of the agreement, through December 31, 2015 (the "Tail Period"), and clarified compensation payable to Confido in the event certain Prospects approved by USAA made capital commitments to USAA following the end of the Consulting Agreement's term—i.e., after December 31, 2015. (Compl. ¶ 26; Pressment Decl. Ex. E, ECF No. 17 at 51 (filed Oct. 27, 2017)

[hereinafter Third Am.].)  Under the Third Amendment, Confido

would earn a partially reduced Success Fee—75 basis points

instead of 100—for a Commitment made by any Qualifying Investor

on either the Approved Prospects List or Tail Period Prospects

List (an "Approved Investor") that made a Commitment to USAA.

(Compl. ¶ 27; Third Am. ¶ 8.)  The Tail Period Prospects List is

defined in the Third Amendment as:

> Not less than 20 days before the expiration of
> the Term . . . Confido shall give written
> notice to the Manager of the identity of
> Approved Prospects on the Approved Prospects
> List that have evidenced an actual and bona
> fide interest in investing in a USAA
> Investment Vehicle prior to the Tail
> Expiration Date . . .

(Compl. ¶ 28; Third Am. ¶ 13.)

    The Consulting Agreement also included certain

confidentiality obligations.  Section 11.02 of the Consulting

Agreement provides that during the term of the agreement and for

two years following termination (i) neither party may disclose

Confidential Information of the other "to any person outside the

scope of [the] Agreement except with the specific prior written

consent of the other [p]arty," and (ii) neither party may use

Confidential Information "for its own account outside the scope

of [the] Agreement or for the benefit of any third party . . .

without the prior written consent of the other [p]arty." (Compl.

¶ 37; Consult. Agr. § 11.02.)  Section 11.01 defines

Confidential Information to include

> with respect to Confido, all information,
> whether oral or written, concerning or
> relating to the names, addresses, contact
> information, and other investment-related
> strategies or information concerning any
> Introduced Contacts or any Prospects
> identified on Confido Notices or Approved
> Prospects Lists, or concerning Qualifying
> Investors, or with respect to Confido's
> relationships and methods and/or strategies
> with respect to marketing investment products
> to or raising capital from such parties.

(Compl. ¶ 37; Consult. Agr. § 11.01.)

During the term of the Consulting Agreement, Confido kept

USAA informed of the investment market in South Korea and

development prospects and, in conformance with the Consulting

Agreement, arranged numerous trips to South Korea where USAA

representatives were introduced to representatives of various

Korean investors, including governmental institutions. (Compl. ¶

29.)  Confido introduced to USAA approximately 100 Prospects, of

which approximately fifteen have since made a capital commitment

to a USAA investment vehicle. (Id. ¶ 30.)  In total, capital

commitments made by Prospects that Confido introduced to USAA or

its funds amounted to approximately $600 million. (Id.)  The

Consulting Agreement restricted the extent to which Plaintiffs

could offer their marketing and capital raising to alternative

clients during the entire term of the Agreement—particularly

with respect to the sort of investment activities in which USAA engaged—thus Confido was especially dependent on USAA as a source of revenue for its business activities. (Id. ¶ 31.)

After deciding not to extend the Consulting Agreement beyond 2015, Confido and USAA negotiated through December 2015 the investors to be included on the Tail Period Prospects List. (Id. ¶ 32.) Rodriguez requested through email communications with Susan Wallace ("Wallace"), Executive Managing Director, Global Investors Group of USAA, that several institutions be included on the Tail Period Prospects List. (Id. ¶¶ 29, 33.) In response, Wallace rejected certain institutions. (Id. ¶ 34.) Two of the institutional investors that Wallace rejected—the Korean Fisheries Pension Fund ("Suhyup") and Seoul National University ("SNU")—later made significant Commitments to USAA funds before the Tail Expiration Date, which would have entitled Confido to significant Success Fees had they been on the Tail Period Prospects List. (Id.) USAA continued to communicate with these potential investors despite excluding them from the Tail Period Prospects List, eventually culminating in their decisions to invest capital with USAA. (Id.) USAA never informed Confido or Rodriguez of these continued communications. (Id.) In addition, the Korea Post Office had expressed an interest in investing in USAA, and USAA had ongoing communications with the Korea Post Office concerning possible investment. (Id. ¶ 35.)

USAA also failed to disclose these communications or Commitments to Plaintiffs, in contravention of its obligations under the Consulting Agreement. (Id. ¶ 36.)

Under Section 4.04 of the Consulting Agreement, while the Success Fee was earned under Article IV of the Consulting Agreement, when a Qualifying Investor on an appropriate list made a Commitment, the fee would not be paid to Confido until capital was drawn down by the applicable fund. (Id. ¶ 38.) Relying on Section 4.04, USAA has withheld payments of Success Fees to Confido from certain Approved Investors—including Military Mutual Aid ("MMA"), a Korean pension fund—that made a Commitment to a USAA fund due to USAA's failure to call capital. (Id. ¶ 39.) USAA did so "in part in apparent retaliation for MMA's attempts to make a direct investment in real estate investment opportunities outside of USAA . . . [and] not on the basis of any legitimate commercial reason." (Id.)

The final Tail Period Prospects List was memorialized on December 14, 2015. (Id. ¶ 40.) Certain Approved Investors listed in the Tail Period Prospects List, including the Korea Post Office, ultimately made Commitments to a USAA fund. (Id. ¶ 41.) The Korea Post Office was listed in the Tail Period Prospects List with the parenthetical reference "(for GB Fund)" referring to the USAA's Government Building Fund ("GB Fund"). (Id.; Pressment Decl. Ex. F, ECF No. 17 at 57 (filed Oct. 27,

2017) [hereinafter Tail Letter].)  Prior to the Tail Expiration Date, the Korea Post Office made a $70 million Commitment in USAA's Eagle Fund ("Eagle Fund"), which entitled Confido to a Success Fee of $525,000 under the Third Amendment. (Id. ¶ 41.) However, USAA has denied that Confido earned any Success Fee from these Commitments because the Commitment was made to a fund other than the GB Fund. (Id. ¶¶ 44-45.)  Plaintiffs allege that USAA has, in denying Confido a Success Fee for this Commitment, breached the Consulting Agreement and wrongfully deprived Confido of significant compensation to which it is entitled. (Id. ¶ 44.)

In addition, Confido introduced USAA to a key contact in South Korea—Pension Office Benefit Association ("POBA")—for possible investment in USAA funds. (Id. ¶ 46.)  In June 2014, as part of the arrangement, USAA promised to host POBA representatives in Texas to learn more about the real estate and related investment market. (Id. ¶ 47.)  At the last minute, USAA made an "unspecified and unsubstantiated" determination that such an event would present possible securities law violations and abruptly canceled the entire event. (Id.)  As a result, POBA has since refused to work with Confido or Rodriguez, despite a long standing professional relationship. (Id. ¶ 48.)  In addition, this incident severely tarnished Confido's reputation,

and Rodriguez's personal and professional reputation, in South
Korea. (Id.)

On March 21, 2017, Plaintiffs commenced this action in the
Supreme Court of New York, New York County.  On July 24, 2017,
USAA removed the action to this Court.[1]  Plaintiffs allege five
causes of action:  (1) breach of contract,
(2) misrepresentation, (3) tortious interference with
prospective economic advantage, (4) misappropriation, and (5)
unjust enrichment.  On September 15, 2017, USAA moved to dismiss
the complaint for failure to state a claim under Rule 12(b)(6).

## II.  Discussion

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a
complaint must contain "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d
Cir. 2011).  In determining the adequacy of the complaint, the

---

[1] USAA notes that Plaintiffs "attempted" to effectuate service on USAA
on July 12, 2017, however "the Complaint does not appear to have been
filed at the time service was attempted, and USAA [] disputes whether
services of the Summons and Complaint was ever properly effectuated,
[but] in an abundance of caution USAA [] removed this action to this
Court on July 24, 2017." (Def.'s Mem. at 11.)  USAA does not otherwise
raise the issue of service in its motion.

Court may consider any document attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents which are integral to the complaint. Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015). In addition, the Court "should resolve any contractual ambiguities in favor of the plaintiff." Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

### B. Analysis

#### 1. Rodriguez Lacks Standing to Sue in His Individual Capacity

USAA first argues that the Court should dismiss all claims brought by Rodriguez in his individual capacity. USAA contends that Rodriguez lacks standing to assert a breach of contract claim because he is not a party to the Consulting Agreement, or to any of its amendments, in an individual capacity. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 12, ECF No. 16 (filed Oct. 27, 2017).) In addition, Rodriguez's tortious and unjust enrichment claims fail because he does not allege that he had any relationships with USAA in his individual capacity or otherwise independent of his role as the CEO of Confido. (Id. at 12-13.) Nor does the complaint contain any allegations that

Rodriguez worked for USAA in his individual capacity. (<u>Id.</u> at 13.)  Plaintiffs do not respond to USAA's standing arguments.

The Court agrees that Rodriguez lacks standing to bring claims against USAA in an individual capacity.  "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence[] an intent to permit enforcement by the third party in question." <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009) (internal quotation marks and citations omitted). "An individual lacks standing to bring claims for breach of contract where injuries to the individual 'were indirectly caused by harm to [a business organization] and therefore are not distinct.'" <u>Russell Pub. Grp., Ltd. v. Brown Printing Co.</u>, No. 13 CIV. 5193 SAS, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014) (quoting <u>Caravella v. City of New York</u>, 79 F. App'x 452, 453 (2d Cir. 2003)).  Rodriguez signed the Consulting Agreement as CEO of Confido and also in his personal capacity "only with respect to the second sentence of Section 8.02." (Consult. Agr. at 18.)  The second sentence of Section 8.02 reads:

> Rodriguez shall provide . . . a separate but limited indemnification to [USAA], its Affiliates and their respective employees, principals, stockholders, directors, officers, agents, successors and assigns, from and against any loss, liability, claim, demand, damage, cost, and expense, joint or several . . . **but only** with respect to and resulting from any demand, claim, lawsuit,

12

> action or proceeding based upon the knowing
> and deliberate inaccuracy of any
> representation made by Rodriguez as to himself
> in this Agreement, and any made by him on
> behalf of or with respect to Sinclair (or any
> successor Confido's Registered Broker-
> Dealer).

(Id. § 8.02 (emphasis in original).) Confido does not allege any breach of contract claims with respect to Section 8.02, nor do Confido's claims in any way rely on Rodriguez's indemnity obligations under Section 8.02. All injuries alleged are to Confido; Plaintiffs do not allege that Rodriguez suffered any distinct injury as an individual, rather than in his capacity as CEO of Confido. Further, Plaintiffs have not alleged any relationship Rodriguez had with USAA in an individual capacity. Accordingly, Rodriguez's claims against USAA are dismissed without prejudice. See, e.g., Russell Pub. Grp., Ltd., 2014 WL 1329144, at *4 (dismissing individual plaintiff's claims for lack of standing where all alleged injuries were to co-plaintiff and individual suffered no "distinct" injury); Dore v. Wormley, 690 F. Supp. 2d 176, 186 (S.D.N.Y. 2010) (dismissing plaintiff's claims where alleged misrepresentation and misuse of funds injuries were to plaintiff's congregation rather than to plaintiff as an individual); see also Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 54-55 (2d Cir. 2016) (dismissal for lack of standing must be without prejudice).

## 2. Plaintiffs' Breach of Contract Claims

In the first cause of action, Plaintiffs allege four breaches of contract: (1) failure to pay Success Fees earned on the Korea Post Office's investment in USAA; (2) breach of USAA's obligations under the covenant of good faith and fair dealing in failing to include Suhyup and SNU on the Tail Period Prospects List, despite USAA's continued communications with these investors and the investors' eventual investments in USAA funds; (3) use of Confido's confidential and proprietary information for USAA's own purposes, without permission from or consultation with Confido; and (4) failure to draw capital from certain investors for improper reasons, thus depriving Confido of duly earned Success Fees. (Compl. ¶¶ 49-54.)

To establish breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [defendant], and (4) damages." Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010). The claimant must identify the specific contractual provisions upon which the breach of contract claim is based. Id.

### a. Failure to Pay Success Fee for Korea Post Office Investment

USAA argues that Plaintiffs have failed to allege breach of contract based on USAA's failure to pay Confido a Success Fee for a Tail Period investment made by the Korea Post Office in

the Eagle Fund. USAA argues that, under Paragraph 8 of the Third Amendment, USAA was obligated to pay Confido a Success Fee with respect to each investment made by a Qualifying Investor included on the Tail Period Prospects List. (Def.'s Mem. at 14.) The Korea Post Office is listed on the Tail Period Prospects List with a parenthetical stating "(for GB fund)," which, USAA contends, specifies the precise fund in which the Korea Post Office would have to invest to be considered a Tail Period Prospect. (Id. at 14-15.) Thus, USAA argues, the Korea Post Office was only considered a Tail Period Prospect with respect to a potential investment in the GB Fund. (Id. at 15.) Confido's allegation that it is entitled to a Success Fee with respect to any investments made by an entity included on the Tail Period Prospects List would render the parenthetical language meaningless. (Id.) Accordingly, USAA contends that the breach of contract claim based on the failure to pay Confido a Success Fee for the Korea Post Office's investment in the Eagle Fund must be dismissed.

On a motion to dismiss under Rule 12(b)(6), the Court is required to draw reasonable inferences and resolve any contractual ambiguities in Plaintiffs' favor. See Luitpold Pharma, Inc. v. Ed. Geistich Sohne AG Fur Chemische Industrial, 784 F.3d 78, 85-86 (2d Cir. 2017). "[A]mbiguity exists where a contract term could suggest more than one meaning when viewed

objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 53 (2d Cir. 2012). That two plausible inferences may be drawn from factual allegations is not a choice to be made by the Court on a Rule 12(b)(6) motion, and in such case, a breach of contract claim must not be dismissed. Anderson News LLC v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

Plaintiffs' allegations of breach based on USAA's failure to pay Confido a Success Fee for the Korea Post Office's investment are plausible based on the plain language of the Consulting Agreement and the Third Amendment. Under Section 4.03 of the Consulting Agreement, as modified by Paragraph 8 of the Third Amendment, Confido is entitled to a Success Fee with respect to "each investment made by a Qualifying Investor" included on the Tail Period Prospects List equal to 75 percent of the Commitment made by a Qualifying Investor. (Third Am. ¶ 8.) Commitment is defined in the Third Amendment as "(i) a binding written subscription for interests in any USAA Investment Vehicle, made by a Qualifying Investor on the Approved Prospects List during the Term or (ii) a binding written subscription for interests in any USAA Investment

Vehicle, made by a Qualifying Investor or the Tail Period

Prospects List after the Term but before the Tail Expiration

Date." (Id. ¶ 2.)  Thus, under the terms of the Consulting

Agreement, if the Korea Post Office, as a Qualifying Investor

included on the Tail Period Prospects List, made an investment

in any USAA Investment Vehicle during the Tail Period, Confido

is entitled to a Success Fee.

Neither the Consulting Agreement nor the Tail Period

Prospects List contains language limiting Confido's Success Fees

to the investments listed in parentheticals.  Indeed, as

Plaintiffs point out, the first entry on the Tail Period

Prospects List includes the clause "for [the GB Fund] and the

whole-loan program only," which seems to indicate a separate

Success Fee arrangement for this investor only if one particular

investment was made. (Tail Letter at 1.)  Plaintiffs contend

that the parenthetical reference included with the Korea Post

Office's name on the Tail Period Prospects List "was a mere

notation identifying one of the products—the GB fund—in which

[the] Korea Post office had expressed recent interest." (Pls.'

Mem. of L. in Opp'n to Mot. to Dismiss at 7, ECF No. 14 (filed

Oct. 13, 2017).)  This interpretation is plausible based on the

plain language of the Tail Period Prospects List and the Third

Amendment, which describes the Tail Period Prospects List as:

"written notice to the Manager of the identity of Approved

Prospects on the Approved Prospects List that have evidenced an actual and bona fide interest in investing in a USAA Investment Vehicle prior to the Tail Expiration Date." (Third Am. ¶ 13.)

USAA's alternative interpretation of the parenthetical language in the Tail Period Prospects Letter is inappropriate on a motion to dismiss. At best, the qualifying language in the Tail Period Prospects List makes the contractual language ambiguous as to whether Confido is entitled to a Success Fee for an investment by the Korea Post Office in something other than the GB Fund. On a motion to dismiss, the Court is required to give weight to the plaintiff's contractual interpretation and any ambiguities are to be resolved in a plaintiff's favor. Accordingly, USAA's motion to dismiss Plaintiffs' breach of contract claim as to the Korea Post Office claim is denied.

**b.    USAA's Failure to Include Suhyup and SNU on Tail Period Prospects List**

USAA argues that Plaintiffs have failed to allege that USAA breached the Consulting Agreement when it refused to add Suhyup and SNU to the Tail Period Prospects List because Plaintiffs have not identified any provision of the Consulting Agreement that was actually breached. The Court agrees. Nowhere in the complaint do Plaintiffs identify the contractual provision in the Consulting Agreement that USAA breached when it allegedly refused to add Suhyup and SNU to the Tail Period Prospects List.

In their opposition brief, Plaintiffs contend that USAA's continued communications with Suhyup and SNU breached its obligations under the Agreement, and that USAA "failed to inform Confido of their investment, despite the quarterly updates Confido was to receive under Section 4.04." (Pls.' Mem. at 11.) Plaintiffs also argue that under Sections 5.01 and 5.02, USAA was required to keep Confido informed of material communications with "Introduced Contracts," give Confido advance notice of and opportunity to participate in all material telephone calls and personal meetings with Introduced Contacts, and notify Confido of all material meetings and material calls with Qualifying Investors which pertain to "any USAA Investment Vehicle." (Id.) However, the complaint is void of any allegations as to how USAA's failure to include Suhyup and SNU on the Tail Period Prospects List violates any of these contractual provisions regarding communications between USAA and potential investors.

Plaintiffs contend that USAA's failure to include Suhyup and SNU on the Tail Period Prospects List breached its obligation under the covenant of good faith and fair dealing, "given that USAA continued to communicate with such investors and such investors eventually made significant Commitments prior to the Tail Expiration Date." (Compl. ¶ 51.) Under New York law, every contract contains an implied promise that "neither party to a contract shall do anything which has the effect of

destroying or injuring the right of the other party to receive the fruits of the contract." M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990). However, the covenant only applies where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract. Singer Grp., Inc. v. Nine W. Holdings, Inc., No. 14-CV-3619 (SAS), 2015 WL 9582431, at *3 (S.D.N.Y. Dec. 30, 2015) (internal quotation marks and citation omitted). In other words, a breach of the covenant is "merely a breach of the underlying contract," and "cannot be used to create new contractual rights between the parties." Id. (quoting Cohen v. Elephant Wireless, Inc., No. 03 Civ. 4058, 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004)).

Plaintiffs do not allege that any provisions of the Consulting Agreement prohibited USAA from declining to include certain Qualifying Investors on the Tail Period Prospects List. Thus, Plaintiffs cannot use the implied covenant of good faith and fair dealing to "add wholly new terms to the contract." Macfarlane & Assocs., Inc. v. Noxell Corp., No. 93 Civ. 5192(PKL), 1994 WL 369324, at *3 (S.D.N.Y. July 13, 1994). Accordingly, Plaintiffs claim for breach based on the failure to include Suhyup and SNU on the Tail Period Prospects List is dismissed without prejudice. See, e.g., Singer Grp, Inc., 2015 WL 9582431, at *4 (granting summary judgment for defendant where

20

claim for breach of implied covenant of good faith and fair dealing "improperly writes an additional obligation into the Agreement . . . that contradicts the Agreement's express [provision]"); <u>Wagner v. JP Morgan Chase Bank</u>, No. 06 CIV. 3126 RJS, 2011 WL 856262, at *5 (S.D.N.Y. Mar. 9, 2011) (finding that it is not the Court's place to use the implied covenant of good faith and fair dealing to add a substantive term to an agreement to which the parties did not explicitly agree).

### c. Use of Confido's Confidential Information

Plaintiffs allege that USAA "used confidential and proprietary information of Confido for their own purposes, outside the scope of the Consulting Agreement, without permission from or consultation with Confido, and without proper compensation to Confido, in breach of its confidentiality obligations under Article XI of the Consulting Agreement." (Compl. ¶ 52.) USAA argues that Plaintiffs have failed to provide any details regarding this alleged breach, including any of the confidential information that USAA actually used or when it did so. (Def.'s Mem. at 20.) Plaintiffs argue that despite USAA's failure to include Suhyup and SNU on the Tail Period Prospects List, USAA continued to communicate with these investors, and failed to inform Confido of their eventual investments. (Pls.' Mem. at 11.) Plaintiffs contend that this was a breach of USAA's confidentiality obligations because it

constitutes misuse of confidential information and the relationships Confido built with these contacts. (Id. at 12.)

Under the Consulting Agreement, Confidential Information is defined as "all information, whether oral or written, concerning or relating to the names, addresses, contact information and other investment-related strategies or information concerning any Introduced Contacts or any Prospects identified on Confido Notices or Approved Prospects Lists, or concerning Qualifying Investors, or with respect to Confido's relationships and methods and/or strategies with respect to marketing investment products to or raising capital from such parties." (Consult. Agr. § 11.01.) The parties agreed that they would not "disclose [Confidential Information] to any person outside the scope of this Agreement except with the specific prior written consent of the other Party . . . . Neither [party] may use for its own account outside the scope of this Agreement or for the benefit of any third party any Confidential Information, without the prior written consent of the other Party." (Id. § 11.02.)

Plaintiffs fail to allege how USAA's continued communications with Suhyup and SNU, and these contacts' eventual investments with USAA violate the Confidentiality provisions of the Consulting Agreements. Plaintiffs allege only that "USAA continued to communicate with these potential investors despite excluding them from the Tail Period [Prospects List], eventually

22

culminating in their decisions to invest capital with USAA . . . [and] USAA never informed Confido or Rodriguez of these continued communications." (Compl. ¶ 34.) These allegations do not adequately plead a breach of the Consulting Agreement based on USAA's misuse of Confido's Confidential Information, as they do not describe what Confidential Information was used in contravention of Sections 11.01 and 11.02. Thus, Plaintiffs' breach of contract claim based on the misuse of Confido's Confidential Information is dismissed without prejudice.

### d.  Failure to Draw Capital for Improper Reasons

Plaintiffs allege that USAA breached the Consulting Agreement by failing to pay Confido a Success Fee for a Commitment by MMA that USAA never drew on in order to deprive Confido of its Success Fee. (Compl. ¶¶ 39, 53.) USAA argues that nothing in the Consulting Agreement required it to draw on capital from any potential investor; rather, USAA had "sole discretion" to decide which Commitments it would accept "for any reason or with no reason." (Consult. Agr. § 2.03.) Plaintiffs argue in opposition that USAA's failure to draw capital on MMA's Commitment to avoid payment of Confido's fees violates the covenant of good faith and fair dealing.

As Plaintiffs concede, under the Consulting Agreement, USAA clearly had discretion over whether to accept or reject a proposed investment and the terms thereof. (Pls.' Mem. at 13;

Consult. Agr. § 2.03.)  Thus, Plaintiffs cannot allege breach of contract based on failure to accept a Commitment from MMA.  To the extent Plaintiffs argue that USAA's failure to draw capital from MMA's investment violated the covenant of good faith and fair dealing, this allegation fails for the same reasons discussed above with regards to the failure to include Suhyup and SNU on the Tail Period Prospects List:  Plaintiffs cannot use the implied covenant of good faith and fair dealing to create new contractual rights that the parties did not agree to in the Consulting Agreement.  Thus, Plaintiffs' breach of contract claim based on the failure to draw capital from MMA for improper reasons is dismissed without prejudice.

### 3.  Plaintiffs' Misrepresentation Claim

Plaintiffs allege that USAA's representatives, including Wallace, knowingly misrepresented that certain potential investors who Plaintiffs introduced to USAA were not interested or had not expressed any interest in investing in USAA, and failed to disclose ongoing communications between USAA and such investors. (Compl. ¶ 56.)  Plaintiffs further allege that USAA induced Confido to rely on such statements by "failing to insist that these potential investors be included on the Tail Period Prospects List" and that USAA improperly avoided paying Success Fees to Confido for these prospective investors. (Id. ¶¶ 57-58.) USAA argues that Plaintiffs have failed to plead a claim for

24

negligent misrepresentation, specifically the required element
of the existence of a special relationship between USAA and
Confido. (Def.'s Mem. at 21.)  Plaintiffs argue in opposition
that they have alleged a claim for either fraudulent or
negligent misrepresentation. (Pls.' Mem. at 14.)

As Plaintiffs acknowledge, Plaintiffs' allegations are more
accurately characterized as a claim for fraudulent concealment.
(See id. at 15.)  "A claim for fraudulent concealment must
allege (1) nondisclosure of (2) material facts, in the face of
(3) a duty to disclose, (4) scienter, (5) reliance, and (6)
damages." In re New York Trap Rock Corp., 42 F.3d 747, 754 (2d
Cir. 1994). The crucial element is the duty to speak:

> New York recognizes a duty by a party to a
> business transaction to speak in three
> situations:  first, where the party has made
> a partial or ambiguous statement, on the
> theory that once a party has undertaken to
> mention a relevant fact to the other party it
> cannot give only half of the truth; second,
> when the parties stand in a fiduciary or
> confidential relationship with each other; and
> third, where one party possesses superior
> knowledge, not readily available to the other,
> and knows that the other is acting on the basis
> of mistaken knowledge.

Yusin Brake Corp. v. Motorcar Parts of Am., Inc., No. 13 CIV.
9223 DLC, 2014 WL 2560612, at *9 (S.D.N.Y. June 6, 2014)
(citations omitted and emphasis in original).  Fraudulent
concealment claims must be pleaded with particularity under Rule
9(b). See id.

Plaintiffs have not adequately alleged a claim for fraudulent concealment.  Most importantly, Plaintiffs have not established that USAA had a duty to speak.  Plaintiffs argue that USAA "made incomplete statements" and "falsely stated that they had expressed no interest to invest, concealing the fact and content of communications which they knew were occurring and which evidenced the contrary." (Pls.' Mem. at 16.)  However, Plaintiffs have not identified when these statements were made or the content of these statements, as required to plead a fraud claim under Rule 9(b). See Nakahata v. New York–Presbyterian Healthcare System, Inc., 723 F.3d 192, 197–98 (2d Cir. 2013) (To comply with Rule 9(b), a complaint must:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.").  Plaintiffs also argue that USAA had "superior knowledge of [] material facts." (Pls.' Mem. at 16.)  However, it seems implausible that such "superior" knowledge was not readily available to Plaintiffs, given that Confido introduced these investors to USAA. (See Compl. ¶ 56.)  Thus, Plaintiffs have failed to allege a claim for fraudulent concealment.

Plaintiffs have also failed to plead a claim for negligent misrepresentation.  To plead negligent misrepresentation, a plaintiff must allege "(1) the existence of a special or

privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff, (2) that the information was incorrect, and (3) reasonable reliance on the information." Gomez-Jimenez v. New York Law Sch., 103 A.D.3d 13, 18 (N.Y. App. Div. 2012). Privity of contract may establish the type of special relationship that permits a negligent misrepresentation claim where the agreement at issue is not "at arm's length." Lavastone Capital LLC v. Coventry First LLC, No. 14-CV-7139 (JSR), 2015 WL 1939711, at *11 (S.D.N.Y. Apr. 22, 2015). Plaintiffs have not sufficiently alleged that the Consulting Agreement was not arm's length. Plaintiffs argue that USAA had "unqualified discretion to reject any Commitment or investment from any Prospect or other contact Confido introduced" and "exclusive knowledge and control over whether Confido would earn Success Fees." (Pls.' Mem. at 20.) However, this argument is belied by Plaintiffs' allegation that "Confido and USAA negotiated through December 2015 the introduced investors to be included on the Tail Period Prospects List." (Compl. ¶ 32.) Further, Plaintiffs have failed to allege facts showing that "the availability of information between the parties was inherently uneven," as Confido had the same, if not superior access to information from investors who it had introduced to USAA. Accordingly, Plaintiffs' negligent misrepresentation claim is dismissed without prejudice.

**4. Plaintiffs' Claim for Tortious Interference with Prospective Advantage and Prospective Economic Relations**

Under New York law, a claim for tortious interference with prospective economic advantage must allege that (1) a business relationship existed between the plaintiff and a third party, (2) the defendant was aware of the relationship and intentionally interfered, (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or wrongful means, and (4) these acts injured the relationship between the plaintiff and the third party. Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006). The third prong "poses a 'particularly high hurdle, for it requires a plaintiff to show that the defendant committed a crime or an independent tort [such as fraud], or [acted] for the sole purpose of inflicting intentional harm' on the plaintiff." Nielson Co. (U.S.), LLC v. Success Sys., Inc., 112 F. Supp. 3d 83, 114 (S.D.N.Y 2015) (quoting Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 247 (S.D.N.Y. 2014)). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Connolly v. Wood-Smith, No. 11 CIV. 8801 DAB JCF, 2014 WL 1257909, at *4 (S.D.N.Y. Mar. 27, 2014). In addition, "[t]he defendant must target some activities toward the third party and convince the third party not to enter into a business

relationship with the plaintiff." <u>In re Refco Inc. Securities Litigation</u>, 826 F. Supp. 2d 478, 520 (S.D.N.Y. 2011).

Plaintiffs allege that USAA tortiously interfered with Plaintiffs' relationship with POBA by (1) failing to include Suhyup and SNU on the Tail Period Prospects List, yet continuing to communicate with these investors until Suhyup and SNU decided to invest in USAA, and (2) canceling POBA's investment trip to Texas, which precluded Confido from continuing its relationships with these institutions. (Compl. ¶¶ 62-64.) Plaintiffs allege that but for USAA's actions, these institutions would have maintained or entered into future business relationships with Plaintiffs, and that USAA's interference with Plaintiffs' goodwill with current and prospective clients and investment contacts was intentional, malicious, and without justification, and diminishes Plaintiffs' reasonable expectations of economic advantage. (<u>Id.</u> ¶¶ 63-64.)

These allegations are insufficient to plead a claim for tortious interference with prospective economic advantage. Plaintiffs have not alleged that USAA committed an independent tort, such as fraud, or acted for the sole purpose of inflicting intentional harm on the plaintiff. With regards to Suhyup and SNU, at most, Plaintiffs allege that USAA never informed Plaintiffs of its continued discussions with Suhyup and SNU or of Suhyup's and SNU's decision to invest in USAA. These

allegations do not adequately plead a claim for fraud, which must be alleged with particularity. <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs merely provide general allegations regarding continued communications between Suhyup, SNU, and USAA, but do not state when these communications took place, or when USAA's alleged omissions regarding these communications occurred. Further, Plaintiffs have failed to allege how USAA's omissions regarding Suhyup and SNU damaged Confido's relationship with Suhyup and SNU—rather than depriving Confido of a Success Fee from USAA—or that USAA's actions were specifically directed at Suhyup and SNU, rather than at Plaintiffs.

With regards to the allegations that USAA tortiously interfered with Plaintiffs' relationship with POBA by canceling POBA's investment trip to Texas, thereby precluding Confido from having a continued relationship with POBA, Plaintiffs have also failed to allege facts showing that USAA committed an independent tort or acted for the sole purpose of inflicting intentional harm on the plaintiff. Indeed, Plaintiffs allege that USAA cancelled the trip because it was concerned that the trip could present possible securities law violations. (Compl. ¶ 47.) Finally, Plaintiffs have not alleged that USAA's actions were specifically directed at POBA, rather than at Plaintiffs.

Thus, Plaintiffs' claim for tortious interference with prospective economic advantage is dismissed without prejudice.

### 5.    Plaintiffs' Misappropriation Claim

Plaintiffs allege that USAA misused Confido's Confidential Information for its own purposes in breach of the Consulting Agreement and "otherwise directly contacted certain potential investors that Confido had introduced and continued to communicate with them despite indicating to Confido the lack of interest of such investors in [USAA]'s funds." (Compl. ¶¶ 69–70.)  Certain investors with which USAA privately communicated eventually invested in USAA's funds, yet USAA never compensated Confido for such investments. (Id. ¶ 71.)

Under New York law, "[w]here the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract; otherwise plaintiff is limited to an action in contract." Carvel Corp. v. Noonan, 350 F.3d 6, 16 (2d Cir. 2003); see also Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc., 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010) (misappropriation claim "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract").  However, a defendant "may also breach an independent duty in tort if the

defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." Carvel Corp., 350 F.3d at 6.

Plaintiffs have not sufficiently alleged that USAA acted willfully in breaching the Consulting Agreement.  Plaintiffs argue that a trier of fact "could infer" that USAA willfully intended to harm Plaintiffs because USAA continued to communicate with potential investors without any involvement of, and without informing, Confido any extent, securing investments from both Suhyup and SNU. (Pls.' Mem. at 23.)  Plaintiffs also argue that USAA acted to prevent the inclusion of these entities on the Tail Period Prospects List, despite USAA's knowledge of their interest, in contravention of the confidence that had developed between the parties through their relationship. (Id.) However, Plaintiffs provide no evidence in support of these allegations other than conclusory statements that USAA's actions breached the confidentiality provisions of the Consulting Agreement.  Thus, Plaintiffs have not alleged that USAA willfully intended to harm Plaintiffs. See, e.g., A Star Grp., Inc. v. Manitoba Hydro, No. 13 CIV. 4501 PAC, 2014 WL 2933155, at *7 (S.D.N.Y. June 30, 2014) (dismissing tort claims as duplicative of breach of contract claims where "the Complaint relie[d] exclusively on the confidentiality provisions contained in the contracts" and plaintiff did not plausibly allege

willfulness on the part of defendant).  Accordingly, Plaintiffs'
misappropriation claim is duplicative of the breach of contract
claim and is dismissed without prejudice.

### 6.  Plaintiffs' Unjust Enrichment Claim

Under New York law, the existence of a valid contract
typically bars recovery based on the quasi-contract theory of
unjust enrichment. Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d
448, 458-59 (S.D.N.Y. 2016).  However, when there is a bona fide
dispute as to the existence of a contract, an unjust enrichment
claim may be alleged in the alternative alongside a breach of
contract claim. Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d
523, 531 (S.D.N.Y. 2007).  Nevertheless, "a claim for unjust
enrichment will not survive a motion to dismiss unless a
plaintiff explains how the claim is not simply duplicative of
its other claims." AFP Mfg. Corp. v. AFP Imaging Corp., No. 17-
CV-03292 (NSR), 2018 WL 3329859, at *11 (S.D.N.Y. July 6, 2018).
It follows that "where there is a valid and enforceable contract
between the parties, and the subject matter of the unjust
enrichment claim is covered by the contract" a court must
dismiss the unjust enrichment claim. ImagePoint, Inc. v.
JPMorgan Chase Bank, Nat. Ass'n, 27 F. Supp. 3d 494, 516
(S.D.N.Y. 2014) (internal quotation marks omitted).

Although Plaintiffs argue in their opposition brief that
"the validity of the Tail Period [Prospects List] in limiting

Defendant's obligations to compensate Confido has been called into [] question," (Pls.' Mem. at 24), Plaintiffs state earlier that "[i]t is indisputed that the parties entered into a valid contract." (Id. at 4.) Plaintiffs allege in their unjust enrichment claim that "[a]s a result of the Defendant's aforementioned unlawful actions . . . . [including the] use of Plaintiffs' confidential and proprietary information, Plaintiffs have been and will continue to be irreparably damaged." (Compl. ¶¶ 74-75.) These allegations are identical to those underlying Plaintiffs' breach of contract claim, including breach of the Consulting Agreement's confidentiality obligations. Accordingly, because Plaintiffs seek to "simply duplicate" a conventional contract claim for USAA's alleged breach of the Consulting Agreement, the unjust enrichment claim is dismissed with prejudice. Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014); see also AFP Mfg. Corp., 2018 WL 3329859, at *11 (dismissing unjust enrichment claim with prejudice where the only evidence plaintiff offered in support of its claim was a "restatement of the evidence that it provided in furtherance of its breach of contract claim").

### III. Leave to Amend

Plaintiffs request leave to replead any curable deficiencies if all or part of the complaint is dismissed. (Pls.' Mem. at 25.) Federal Rule of Civil Procedure 15

instructs a court to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, amendment "is not warranted absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable." Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004) (internal quotation marks omitted). Accordingly, should Plaintiffs wish to amend, their motion must demonstrate how it will cure the deficiencies in its claims, that justice requires granting leave to amend, and must be filed by October 10, 2018.

## CONCLUSION

For the reasons stated above, USAA's motion to dismiss is DENIED in part and GRANTED in part. Rodriguez's claims are dismissed without prejudice for lack of standing. USAA's motion to dismiss Confido's breach of contract claim based on the failure to pay a Success Fee for the Korea Post Office's investment is DENIED. USAA's motion to dismiss Confido's unjust enrichment claim is GRANTED and it is dismissed with prejudice. USAA's motion to dismiss all other claims is GRANTED and those claims are dismissed without prejudice. The Clerk of Court is directed to terminate the motion docketed at ECF No. 15.

**SO ORDERED.**

Dated:    New York, New York
          September 6 , 2018        *John F. Keenan*

                                    John F. Keenan
                                    United States District Judge

35